***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. Defendant employs three or more employees in the State of North Carolina and is subject to the North Carolina Workers' Compensation Act.
2. Defendant is self-insured. Key Risk Management Services, Inc. is the Third Party Administrator.
3. Plaintiff's psychological injury of February 29, 2004 was deemed compensable with temporary total disability benefits being paid from March 3, 2004 through May 8, 2005.
4. The parties agree that an employer-employee relationship existed between the parties on February 29, 2004.
5. On February 29, 2004, plaintiff's average weekly wage was $625.11, which results in a compensation rate of $416.76.
6. The following were also stipulated into evidence.
 a. Packet of documents including employee's report of injury and Industrial Commission forms.
 b. Packet of documents including medical, psychological and rehabilitation records and memos from the N.C. Department of Correction.
7. The Pre-Trial Agreement dated January 30, 2006, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was forty years old at the time of the hearing before the Deputy Commissioner, has a GED, and has been a Licensed Practical Nurse since before she moved to North Carolina in 2001. At some time after she moved to this state, she worked at Oakdale Heights, an assisted living community, as a nurse. However, in 2003 she accepted employment with defendant as a nurse at Pender Correctional Institution. Her job involved passing out medications to the inmates, assessing them for medical problems, monitoring those with diabetes and handling medical emergencies.
2. On February 29, 2004, plaintiff sustained a compensable psychological injury when she went into the segregation block to give out medication and one of the prison guards, who would have been expected to protect her if necessary, instead began encouraging the inmates to take off their clothes and to submit bids for her, saying that there was an empty cell available. The inmates began shouting dollar figures and reached out for her as she walked by. She became frightened that she might be sexually assaulted and felt extremely vulnerable under the circumstances. The guard laughed at her and continued to incite the inmates even as another guard let her out of the cellblock.
3. Following the experience, plaintiff felt humiliated and degraded, and she was emotionally distraught. The incident was reported by the other guard and plaintiff completed an injury report. She then left work and advised that she did not feel safe returning to the prison. Several days later, she sought treatment with Dr. Deborah Taylor, a clinical psychologist, for tearfulness, depression, nervousness, problems sleeping and anxiety. Dr. Taylor diagnosed her with post-traumatic stress disorder, provided her with psychological counseling and recommended that she see a psychiatrist for medication management of her condition. *Page 4 
4. Plaintiff was reluctant to take medication, but she subsequently began seeing Dr. Nathani, a psychiatrist, on May 28, 2004. He treated her with Ambien, to help her sleep, Lexapro and later Klonipin. Apparently, she missed two appointments with him after the September 17, 2004 office visit, and Dr. Nathani refused to see her again. However, she continued to receive counseling with Dr. Taylor.
5. Defendant admitted liability for the incident pursuant to a Form 63 which was not subsequently denied. Defendant sent plaintiff for an independent evaluation with Dr. Christy Jones, Ph.D., a neuropsychologist. Dr. Jones met with plaintiff on July 28, 2004 and performed psychological testing. The test results were consistent with the history and with Dr. Taylor's diagnosis of post-traumatic stress disorder. Dr. Jones was of the opinion that, with treatment, plaintiff should be able to return to work, although not in a prison setting.
6. Plaintiff's condition gradually improved and by late 2004 she was getting out more and was able to increase her activities. However, she still expressed fearfulness of a prison environment. Dr. Taylor thought that it would be unlikely that plaintiff would ever be able to return to work for a prison. Consequently, plaintiff pursued other employment options by taking a real estate course. However, she did not pass either of two examinations given and she reported to Dr. Taylor that she had had problems with her concentration and memory. She also appeared to be more depressed after her unsuccessful attempt at passing the course.
7. In February 2005 plaintiff underwent another evaluation by Dr. Jones, who performed additional testing. The tests results were somewhat inconsistent, since plaintiff scored higher on memory scales than her I.Q. scores would indicate. Since plaintiff had reported symptoms of depression, Dr. Jones concluded that the depression must have been affecting her ability to think and to focus. Dr. Jones was disturbed that plaintiff had stopped taking the *Page 5 
medication prescribed by Dr. Nathani without medical authorization or supervision. Even though plaintiff was not taking antidepressant medication, Dr. Jones was of the opinion that she should still have a good prognosis since the inciting event for her psychological condition was relatively insignificant compared to most cases of post-traumatic stress disorder. Plaintiff was advised to follow-up with a psychiatrist. Dr. Jones also opined that, although plaintiff could probably not return to work at the prison, plaintiff was capable of returning to work.
8. Plaintiff subsequently saw Dr. James Pawlowski on March 28, 2005. His office note for that evaluation was hand-written and largely illegible, but it appeared that he thought her post-traumatic stress disorder was resolving. He prescribed medication and advised her to follow up with Dr. Taylor. Plaintiff did not return to Dr. Pawlowski because the medications caused side effects.
9. In May 2005 plaintiff obtained a job at Oakdale Heights where she had previously worked. The job, resident care director, was a better position than her former one and did not normally involve direct patient care. Rather, her duties included supervising CNAs and medication technicians, checking the residents' charts to make sure that they were receiving the proper medications and care, completing and submitting forms required by the State, and making the work schedules for the CNAs.
10. When she was hired, plaintiff informed her supervisor, Patricia Knox, that she already had a vacation planned from May 27 to June 11, 2005, and it was agreed that she could take off work during that period. At some point, she explained that she was traveling to New York City to meet a man with whom she had been exchanging correspondence over the Internet. She was excited and happy about the trip. One evening before she left, Ms. Knox and another employee went shopping with her to help her find some new clothes for the vacation. *Page 6 
11. Ms. Knox was satisfied with plaintiff's work. Plaintiff was able to learn the computer-scheduling program, was capable of auditing the charts properly, was "bubbly" and nice, and had very good rapport with the staff and the residents. However, she was absent from work for flu-like symptoms on June 15, 2005, she was absent from work when her son was sick on July 6, 2005, and she was absent from work due to her father's illness from July 11 to July 14, 2005. Although employees were not supposed to have more than three absences in a sixty-day period, Ms. Knox was sympathetic regarding the situation with plaintiff's father so nothing was said at that time.
12. Subsequently, on August 1, 2005 plaintiff left work early due to nausea without first informing Ms. Knox, which was contrary to company policy. Ms. Knox called her and told her that on this occasion a written warning would be issued. Plaintiff was not willing to accept the write-up and verbally resigned from her position during the telephone conversation. She later reported to the facility and signed a written resignation letter.
13. Up until August 1, 2005, plaintiff had neither demonstrated nor expressed having problems with her job to her supervisor. She was not terminated but rather voluntarily resigned because she did not want Ms. Knox to write her up for excessive absenteeism.
14. Plaintiff resumed counseling with Dr. Taylor after her resignation on August 1, 2005. The records reflecting plaintiff's sessions with Dr. Taylor after August 1, 2005, reflect that plaintiff did not tell Dr. Taylor about the trip to New York, the reason for the trip, or the truth regarding why she stopped working at Oakdale Heights. Rather, Dr. Taylor indicates that plaintiff "found that the burden of ultimate responsibility for patient care fell on her and after a brief period she resigned her position. The stress associated with caring for patients is apparently too disturbing for [plaintiff]." Dr. Taylor further notes that "for now, it seems clear that Ms. *Page 7 
DeVeaugh is unable to work as a nurse." The Full Commission finds as fact that Dr. Taylor based her opinion regarding plaintiff's ability to work on plaintiff's account of her job responsibilities and the reason she resigned which conflicts with the facts as found herein.
15. Defendant paid compensation to plaintiff for temporary total disability until she returned to work for Oakdale Heights in May 2005. However, defendant did not reinstate benefits after plaintiff stopped working there in August 2005.
16. Plaintiff was capable of performing the job of resident care director at Oakdale Heights. Plaintiff misrepresented her symptoms as well as her job responsibilities to Dr. Taylor during the time she worked there. Her condition had improved sufficiently by May 2005 that she was able to meet a strange man in a large, unfamiliar city. The fact that she would take such a trip and happily anticipate its approach was inconsistent with her alleged symptoms of anxiety, fearfulness, perceived threats, and discomfort when in public. Dr. Taylor's opinions regarding plaintiff's inability to work were based upon significantly inaccurate information provided to her by plaintiff. Therefore, the Full Commission finds that Dr. Taylor's opinion regarding plaintiff's ability to work is not credible inasmuch as it is based on incorrect information Dr. Taylor received from plaintiff.
17. Plaintiff's allegation that she has continued to experience debilitating symptoms of anxiety and depression related to the incident at the prison has not been accepted as credible. She not only failed to prove that she has been unable to work since August 1, 2005, but rather the evidence establishes that she actually has been capable of working and earning wages equivalent to or greater than her prior earnings with defendant. While working at Oakdale Heights, she did not demonstrate anxiety or depression, she missed work two days or less for physical health problems but did not miss any work for psychological issues, she was able to perform tasks *Page 8 
which required her to concentrate and to learn a computer program. Plaintiff never told Ms. Knox that she was having problems performing her job duties for any reason. Her resignation was voluntarily and she would otherwise have been able to continue working for the facility in a position which was suitable to her capacity. Furthermore, her problem with absenteeism was unrelated to the incident giving rise to this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
Plaintiff is not entitled to further compensation for temporary or permanent total disability. She has been capable of working and earning wages equivalent to or greater than those she was earning at the time of the injury by accident giving rise to this claim since May 9, 2005 when she returned to work for another employer. N.C. Gen. Stat. § 97-29;Johnson v. Southern Tire Sales and Service, 358 N.C. 701 (2004);Anderson v. Northwestern Motor Company, 233 N.C. 372 (1951).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for further compensation after May 9, 2005, for temporary or permanent total disability is denied.
 This the 12th day of February, 2007. *Page 9 
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1